UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

RAFAEL DIAZ CASIQUE,

    Petitioner,

    v.

GREG LEWIS,

    Respondent.

No. C 11-3449 SI (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed by a pro se state prisoner pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the petition is DENIED.

## BACKGROUND

On March 3, 2006, a jury found petitioner guilty of the first-degree murder of Michael Lee. The jury also found true the enhancement allegations that petitioner used a handgun during the commission of the murder and inflicted great bodily injury on his victim. The jury sentenced petitioner to state prison for fifty years to life. The events leading to petitioner's conviction are detailed below.

The victim, Lee, used and sold methamphetamine, engaged in identity theft and was a member of the Norteno gang. In February 2001, he lived in Fremont with his girlfriend, Audra Silva, Stanley Adams and Adams' girlfriend, Cherise. Petitioner was a leader of the Decoto criminal street gang based in Union City. One of the primary activities of the Decoto gang was the sale of methamphetamine. Petitioner and Lee had numerous mutual friends.

Anita Romero, a Norteno affiliate, lived in the Paradise Trailer Park in San Leandro and sold methamphetamine there. Steven Ijames also lived in the Paradise Trailer Park, across from Romero.

On the evening of February 3, 2001, Lee arranged to purchase methamphetamine from Romero. He enlisted Adams to drive him and Silva to Romero's trailer to pick up the drugs. They smoked methamphetamine prior to departure.

Upon arrival at the Paradise Trailer Park, Adams parked his vehicle on the street. Lee exited the vehicle and went to Romero's trailer about 30 feet away. On the way to the trailer, Lee encountered his friend, Ijames. They both entered Romero's trailer but she wasn't there. Ijames walked out to go to a liquor store.

As Adams and Silva waited in the vehicle, they noticed two people walk up beside it. These two people walked to Romero's trailer, where they engaged in a hostile conversation with a third person. Adams and Silva then heard gunshots and saw sparks coming from the front porch of the trailer. At trial, Adams and Silva identified petitioner as the shooter. At the time, they did not know who the victim was.

The three men on the porch then walked back to the parked vehicle. Adams and Silva heard someone say, "Maybe next time you'll pay me my fucking money," before one last shot was fired at the rear of the vehicle. They then looked back and realized that the shooting victim was Lee as he slumped down and leaned against the rear window. Adams and Silva ran out of the vehicle to assist Lee. They asked, "Who did this to you," and twice Lee replied "Joker from Decoto."

Lee staggered across the road to Ijames' trailer before he collapsed on the front porch. Silva called 911 as Ijames arrived at his trailer.

Ijames testified that as he was walking to the store, he heard gunshots and immediately returned to the trailer park. An ambulance and police vehicles arrived soon thereafter.

2

Deputy Richard Slofkosky testified that he arrived at the Paradise Trailer Park just after midnight to find Lee face down in front of unit 59. He noticed that Lee's clothes were soaked in blood. He asked Lee if he knew he had been shot. Lee said yes. Lee indicated he knew who shot him and then said "Joker." When Lee repeated "Joker," Slofkosky asked what street he lived on. Lee said he did not know, but that he was from Decoto. Slofkosky asked Lee why Joker had shot him. Lee said, "I owed him money." Lee was transferred to a hospital, where he died.

Petitioner was tried in Alameda County. Following his conviction, petitioner filed an appeal with the State Court of Appeal. His appeal was denied. *People v. Casique*, No. A113636, 2009 WL 1508463 (May 29, 2009). The Supreme Court of California subsequently denied petitioner's Petition For Review.

Petitioner subsequently filed a habeas petition in the Supreme Court of California. The petition was denied without comment.

Petitioner filed the instant federal habeas petition on July 13, 2011. Claims II and VIII of the petition were dismissed on April 5, 2012. Respondent filed an answer on June 22, 2012. Petitioner filed a traverse on August 6, 2012.

**DISCUSSION**

Pursuant to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). If the state court did not reach the merits of a claim, federal review of the claim is de novo. *Nulph v. Cook*, 333 F.3d 1052, 1057 (9th Cir. 2003).

A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1). The state court decision implicated by 2254(d) is the "last reasoned decision" of the state

court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005).

Habeas relief is warranted only if the constitutional error at issue had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Penry v. Johnson*, 532 U.S. 782, 796 (2001).

**A.     Claim I**

Petitioner alleges that the admission of Deputy Slofkosky's testimony constituted error under *Crawford v. Washington*, 541 U.S. 36 (2004). Under *Crawford*, out-of-court statements that are testimonial in nature must be excluded under the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *Id.* at 68. Petitioner contends that *Crawford* compels the exclusion of Slofkosky's testimony stating that in response to questions at the crime scene, Lee told him that he had been shot by "Joker from DeCoto" because he owed Joker money.

The state court rejected petitioner's claim on the grounds that Slofkosky's statements were not testimonial. *Casique*, 2009 WL 1508463 at *14-16. The court explained that "[s]tatements are not testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 15. The court concluded as follows:

> We are [] persuaded that the few questions and answers were designed primarily to deal with the existing emergency, not to establish or prove past facts for prosecutorial use. (*Davis*, supra, 547 U.S. 813, 828.) The officer was attempting to ascertain the essential nature of the situation. (*People v. Pedroza*, supra, 147 Cal.App.4th 784, 793.) He did not solicit a description of the events or seek to discover any details of the shooting. The information gathered by Deputy Slofkosky assisted the immediate law enforcement response to the ongoing crisis. (*People v. Romero*, supra, 44 Cal.4th 386, 422; *People v. Pedroza*, supra, at ¶. 793-794.) Identification of the suspect and discovery of his possible whereabouts could have facilitated his prompt apprehension by the police, and also served to determine if the shooter continued to pose an immediate danger to the public. An inquiry into the reason for the shooting was designed to learn if there may be other potential victims in need of urgent protection from the shooter. The superficiality of the momentary inquiry by the deputy indicates that he was seeking to aid the victim and respond to the current situation, not to facilitate a subsequent conviction in a court of law. (*People v. Brenn*, supra, 152 Cal.App.4th 166, 177.) We find that admission of the victim's nontestimonial statements to Deputy Slofkosky did not violate defendant's right to confrontation, and hence we find no failure by counsel

4

to adequately represent defendant. (*People v. Romero*, supra, 44 Cal.4th 386, 421-422; *People v. Romero* (2007) 149 Cal.App.4th 29, 39.)

*Id*. at 16.

The Court finds the state court's determination that Slofkosky's statements were not testimonial but instead, were intended to enable the police to respond to an emergency, was reasonable. The state court's decision is supported by *Michigan v. Bryant*, 131 S. Ct. 1143, 1155 (2011), in which the United States Supreme Court held that statements made by a gunshot wound victim to first-responders identifying the shooter and describing the circumstances of the shooting were nontestimonial. The Court found that "the most important instances in which the [Confrontation] Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial." *Id*. As in *Bryant*, the context of Slofkosky's questioning of Lee was distinct from a situation where evidence is gathered for trial. Rather, Slofkosky's questioning aimed to enable police to meet an ongoing emergency.

Petitioner fails to establish that the state court's decision constituted an unreasonable application of *Crawford*, or that the state court unreasonably determined the facts. Petitioner's claim lacks merit and is denied.

## B. Claim III

Petitioner alleges that the trial court erred by admitting evidence of his membership in the Decoto Norteno street gang. This evidence included testimony from Ralph Castillo, an affiliate of the Norteno street gang in Hayward, as well as expert testimony from Union City Police Sergeant Gloria Lopez-Vaughn.

The state court rejected petitioner's claim on the grounds that probative value of the gang membership evidence outweighed its prejudicial effect. *Casique*, 2009 WL 1508463 at *19. The evidence was probative of the identity of the shooter in that it established that "Joker from Decoto" was, in fact, petitioner, *id*. at *18, and was also probative of motive – it helped establish that Lee was shot for his non-payment of debt. *Id*. Finally, the evidence helped explain other witnesses' fear of retribution and reluctance to assist the investigation of Lee's murder. *Id*.

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.), *cert. denied*, 479 U.S. 839 (1986). The Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (finding that trial court's admission of irrelevant pornographic materials was "fundamentally unfair" under Ninth Circuit precedent but not contrary to, or an unreasonable application of, clearly established federal law under 28 U.S.C. § 2254(d)).

The Court concludes that the admission of the gang evidence was not so prejudicial that it infected the fairness of petitioner's trial. *See Kernan*, 197 F.3d at 1031. Moreover, petitioner has failed to demonstrate that the state court decision rejecting petitioner's claim constituted an unreasonable application of clearly established federal law. Petitioner's claim lacks merit and is denied.

**C. Claim IV**

Petitioner alleges that the trial court erroneously admitted hearsay testimony from Audra Silva regarding a statement made to her by her friend, Melissa Maya. Silva testified that after the shooting, Maya confirmed petitioner's identity as the Joker. She further testified that Maya told her that "she knows who Joker from Decoto is and that she owed him money in the past and that . . . he'll shoot anybody, like, he doesn't care if you're a mother or if you have kids or whatever. He'll shoot you if you owe him money." *Casique*, 2009 WL 1508463 at *19. Petitioner alleges that these prejudicial hearsay statements were admitted in violation of his right to due process.

The state court rejected petitioner's claim on the grounds that probative value of the Maya's statement to Silva outweighed its prejudicial effect. *Casique*, 2009 WL 1508463 at *19-20. Finding that the evidence was admitted to explain Audra Silva's initial reluctance to answer police questions and to cooperate in the investigation, and that as such, Maya's statement was very probative, the state court found that the trial court's limiting instructions properly directed the jury to consider the evidence "just for the witness's state of mind." in that it explained witnesses' reluctance to identify petitioner as the

shooter. *Id*. at *20.

The admission of Maya's statement to Silva was not so prejudicial that it infected the fairness of petitioner's trial. *See Kernan*, 197 F.3d at 1031. Moreover, petitioner has failed to demonstrate that the state court decision rejecting petitioner's claim constituted an unreasonable application of clearly established federal law. Petitioner's claim lacks merit and is denied.

**D. Claim V**

Petitioner alleges that the admission of old photographs of him dressed in a blue uniform recognizable as prison garb violated his right to due process. He asserts that the photographs effectively informed the jury that he had previously been sentenced to prison and were unduly prejudicial.

The state court denied petitioner's claim, finding that the photographs, although cumulative, corroborated other evidence establishing petitioner's identity as the shooter. *Id*. at *21. Observing that the trial court had found that the photos would not identify petitioner as an inmate, the court concluded that their admission did not violate due process. *Id*.

This Court concludes that the admission of the photographs was not so prejudicial that it infected the fairness of petitioner's trial. *See Kernan*, 197 F.3d at 1031. Also, as in the previous claims, petitioner has failed to demonstrate that the state court decision rejecting petitioner's claim constituted an unreasonable application of clearly established federal law. Petitioner's claim lacks merit and is denied.

**E. Claim VI**

Petitioner alleges that the trial court's admission of Norteno affiliate Ralph Castillo's testimony that on several occasions, he observed petitioner in possession of a handgun violated his right to due process. He asserts that that the handgun was unrelated to the charged offense and was prejudicial.

The state court denied petitioner's claim, finding that petitioner's "possession of guns of the same caliber as the murder weapon raises at least some inference of his guilt." *Casique*, 2009 WL 1508463 at *22. The court acknowledged that the probative value of this testimony was not compelling, but was sufficient to justify admission of the evidence. *Id*.

7

This Court concludes that evidence of petitioner's gun possession gave rise to a reasonable inference of his guilt. Accordingly, the admission Castillo's testimony regarding petitioner's gun possession was not so prejudicial that it infected the fairness of petitioner's trial. *See Kernan*, 197 F.3d at 1031. Petitioner's claim lacks merit and is denied.

**F.  Claim VII**

Petitioner alleges that the trial court erroneously admitted portions of Ralph Castillo's prior extrajudicial statements to Sergeant Dudek as prior consistent statements in violation of petitioner's right to due process. At trial, Castillo admitted that he had previously testified that petitioner did not tell him that Lee was selling drugs for him, but asserted that he had been "in error," and that he had, in fact, previously truthfully told Dudek that petitioner had admitted killing Lee for failure to repay a $2,000 drug debt. Petitioner asserts that Castillo was improperly permitted to bolster his testimony with self-serving statements.

The state court rejected this claim on the grounds that Castillo's statements were properly admitted for rehabilitation purposes after the defense contested Castillo's credibility by implying that he was fabricating evidence in order to obtain favorable treatment in his own criminal case. *Casique*, 2009 WL 1508463 at *23. The court found that the prosecution was entitled to present evidence establishing that Castillo's testimony was consistent with statements he made before he entered any agreements with the government. *Id*.

This Court concludes that the admission of Castillo's prior statements was proper and did not infect the fairness of petitioner's trial. *See Kernan*, 197 F.3d at 1031. Petitioner's claim lacks merit and is denied.

**G.  Claim IX**

Petitioner alleges that trial counsel provided ineffective assistance by failing to call eyewitness Tammy Gonzalez, "who saw the perpetrators at the time of the murder, neither of whom was petitioner." Pet'n at 6a. The Supreme Court of California denied this claim without comment when it ruled on ruled on petitioner's state habeas petition. Resp's Exh. I.

8

1     Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at 687–68, "not whether it deviated from best practices or most common custom," *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 650). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 689). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Ibid.* Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Overall, "the standard for judging counsel's representation is a most deferential one." *Richter*, 131 S. Ct. at 788.

Petitioner's ineffective assistance claim fails because he fails to provide an affidavit outlining Gonzalez's contemplated testimony, or establishing that she would have testified at trial. *Allen v. Woodford*, 395 F.3d 979, 1002 n.2 (9th Cir. 2005), *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000), *United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988). Petitioner's claim is speculative. Accordingly, it lacks merit and is denied.

**H. Claim X**

Petitioner alleges that his trial counsel provided ineffective assistance by failing to present evidence that "Joker" paraphernalia, including a Joker statue, seized from his residence "more than three years after the murder were family knickknacks, entirely unrelated to any drug symbols or gang affiliation." Pet'n at 6a. The Supreme Court of California denied this claim without comment when it ruled on ruled on petitioner's state habeas petition. Resp's Exh. I.

As in the previous claim, petitioner fails to provide an affidavit from a family member or other

9

witness who would testify that the Joker paraphernalia were, in fact, family knickknacks. Moreover, petitioner fails to demonstrate any inconsistency between the paraphernalia in fact being family knickknacks, and his gang membership and drug affiliation – both could be true. Petitioner thus fails to establish a reasonable likelihood that the presentation of the missing evidence would have changed the outcome of his trial. *Strickland*, 466 U.S. at 694. Petitioner's claim lacks merit and is denied.

## I.  Claim XI

Petitioner alleges that stringent security measures during trial, including the wanding of court spectators with a metal detector in full view of the jurors, violated his right to due process. The Supreme Court of California denied this claim without comment when it ruled on ruled on petitioner's state habeas petition. Resp's Exh. I.

The use of security measures can deny a defendant his right to a fair trial if the scene presented to jurors is "inherently prejudicial." *Holbrook v. Flynn*, 476 U.S. 560, 572 (1986). If the defendant fails to show actual prejudice, however, the inquiry is over. *Id*.

Here, petitioner fails to demonstrate that the wanding of spectators was inherently prejudicial. While certain security measures such as shackling, or requiring a defendant to wear prison garb at trial, focus the jury's attention on the defendant's dangerousness and have been found to be prejudicial, other measures, such as the presence of armed guards in the courtroom, are commonplace – jurors might easily believe that the guards are there to protect against disruption. *Id*. at 567-69. Petitioner has failed to establish that the wanding of spectators presented an unacceptable risk of "impermissible factors coming into play," and branded him with an "unmistakable mark of guilt." *Id*. at 571.

Petitioner's claim lacks merit and is denied.

## CONCLUSION

The state court's adjudication of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings. Accordingly, the petition is **DENIED**. The Clerk shall enter judgment in

favor of respondent and close the file.

Furthermore, a certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

**IT IS SO ORDERED**.

Dated: January 10, 2013

SUSAN ILLSTON
United States District Judge